IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SHERRY P.,[1] | ) Civil No.: 3:18-cv-00089-JE |
| Plaintiff, | ) FINDINGS AND |
| | ) RECOMMENDATION |
| v. | ) |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) |
| Defendant. | ) |

JELDERKS, Magistrate Judge:

Plaintiff brings this action pursuant to 42 U.S.C. 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Disability Insurance Benefits (DIB) under the Social Security Act (the Act). Plaintiff requests that the Court remand this action to the Social Security Administration (the Agency) for immediate payment of benefits or, in the alternative, for further proceedings.

For the reasons set out below, the Commissioner's decision should be reversed and remanded for further proceedings.

---

[1] In the interest of privacy, this Findings and Recommendation uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

FINDINGS AND RECOMMENDATION – 1

## Procedural Background

Plaintiff filed an application for a period of disability and DIB on December 21, 2013, alleging she had been disabled since December 11, 2013. After her claim was denied initially and upon reconsideration, Plaintiff requested an administrative hearing.

On July 29, 2016, a hearing was held before Administrative Law Judge (ALJ) John Michaelsen. Plaintiff and Nancy Bloom, an impartial vocational expert (VE), testified at the hearing. Plaintiff was represented by counsel.

In a decision dated September 12, 2016, the ALJ found that Plaintiff had not been disabled within the meaning of the Act at any time from her alleged onset date through the date of the decision.

On November 14, 2017, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born in 1965 and was 51 years old at the time of the ALJ's decision. Tr. 31. She completed high school and has past relevant work as a customer service representative. Tr. 172, 31.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary

of the five steps, which also are described in *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(f).

Step Five. The Commissioner determines whether the claimant is able to do any other

work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant. *Tackett*, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id.*

## **ALJ's Decision**

As a preliminary matter, the ALJ found that Plaintiff met the insured status requirements through December 31, 2018.

At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 11, 2013, the alleged onset date.

At the second step, the ALJ found that Plaintiff had the following severe impairments: history of current headaches and bilateral carpal tunnel syndrome status post left wrist surgery. Tr. 22.

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525

and 404.1526).

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity (RFC). He found that Plaintiff retained the capacity to perform light work except that she could "carry and lift no more than ten pounds. She would be unable to perform activities requiring bilateral repetitive handling or fingering. She would need to avoid climbing ropes, ladders, or scaffolds, and she should avoid all exposure to unprotected heights, moving machinery or similar hazards." Tr. 23-24. In making this determination, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 24.

At Step Four of the disability analysis and based on testimony from the VE, the ALJ found that Plaintiff was unable to perform her past relevant work. Tr. 31.

At the fifth step, the ALJ found that Plaintiff could perform other jobs that existed in significant numbers in the national economy. Based upon testimony from the VE, the ALJ cited counter clerk, furniture rental clerk, and "greaser."[2] Tr. 31-32. Having concluded that Plaintiff could perform other work, the ALJ found that Plaintiff had not been under a disability within the meaning of the Act from December 11, 2013 through the date of his decision. Tr. 32.

**Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. *Roberts v. Shalala*, 66

---

[2] "greaser" appears to be a scrivener's error, as the VE's testimony listed the job as "greeter." Tr. 53.

FINDINGS AND RECOMMENDATION – 5

F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. *Tackett*, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ erred in discounting her allegations of pain and other symptoms stemming from headaches; that he erred in not including limitations in her RFC that accounted for those headaches; and erred by improperly discounting the opinion of her primary care provider, Nurse Practitioner Debra Todd.

**I. "Other Source" Opinion Testimony**

The ALJ is required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In reviewing an ALJ's decision, the court does not assume the role of

fact-finder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

Under the regulations in effect at the time of Plaintiff's application,[3] the opinion of a nurse practitioner was considered an "other medical source" rather than an "acceptable medical source." 20 C.F.R. § 404.1527(f); SSR 06-03p, *available at* 2006 WL 2329939. Care providers who are not "acceptable medical sources," are still considered sources under the regulations that the ALJ can use in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 416.913(d). An ALJ may discount the opinion of an "other source" by providing "germane reasons" for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

In a questionnaire dated July 27, 2016, Plaintiff's long-time primary care provider, Debra Todd, ANP, provided her opinions regarding Plaintiff's symptoms and limitations. Tr. 389-391. Todd listed Plaintiff's medical conditions as including chronic headaches, fibromyalgia, carpal tunnel syndrome, and peripheral neuropathy. Tr. 389. She noted Plaintiff's symptoms included disabling headaches that occurred seven to eight times per month and lasted for days. Id. Todd opined that Plaintiff would have exertional and postural limitations and limitations on the use of her hands. Tr. 390-391. She noted that Plaintiff had to lie down in a dark room when she had a headache and that she expected Plaintiff would miss 16 hours a day or more per month of work primarily due to her "frequent, disabling" headaches. Tr. 390, 391.

The ALJ discussed Todd's treatment notes in his decision and addressed the statements and opinions contained in the questionnaire as follows:

> Regarding the claimant's abilities and limitations, Ms. Todd believes she can

---

[3] Plaintiff filed her claim before the date when regulatory amendments affected the consideration of opinions from nurse practitioners. *See* 20 C.F.R. §§ 404.1502(a)(7), 404.1527(a) (still applicable to claims filed before March 27, 2017).

> occasionally lift and carry up to 25 pounds. She also believes that in an eight-hour day the claimant can lift and carry less than two hours and sit up to four hours. For postural limitations, she proposed limiting climbing, balancing, and stooping to occasionally, and crouching and crawling to never. She based crouching and crawling limitations on "knee pain." For manipulative limitations, she proposed handling and fingering to occasionally and feeling to frequently.
>
> Upon review of the record discussed above, including Ms. Todd's own treatment notes and the examination report from Dr. Webster, the undersigned affords limited weight to Ms. Todd's statement. Specifically, the undersigned finds the record includes no objective medical evidence, such as imaging studies or clinical observations, or prescribed treatment which persuasively shows the claimant could sit, stand, and walk a combination of less than eight hours in an eight-hour day. Similarly, the record does also not include objective evidence of symptoms or limitations that would support Ms. Todd's proposed limitations regarding balancing, stooping, crouching, and crawling.

Tr. 30.

Plaintiff does not challenge the ALJ's assessment of Todd's opinion regarding the exertional, postural and manipulative limitations discussed above. Instead, Plaintiff asserts the ALJ failed to acknowledge or provide reasons for rejecting Todd's opinion regarding the number of workdays Plaintiff would miss due to headaches. She argues that ignoring this significant, probative evidence regarding the limitations imposed by the severe impairment of headaches was error. In support of this argument, Plaintiff relies on the holding in *Dale v. Colvin*, 823 F.3d 941, 945 (9th Cir. 2016) that "an ALJ errs when he discounts an other source's *entire* testimony because of inconsistency with evidence in the record, when the ALJ has divided the testimony into distinct parts and determined that only one part of the testimony is inconsistent." *Id.* (emphasis in original).

The Commissioner argues that *Dale* is inapplicable because the ALJ did not isolate only certain comments by Todd but discounted "the basic issues of sitting, standing, and walking," thereby addressing the "key limitations in the opinion." Def. Brief at 9. The Commissioner also asserts that because Todd's opinion regarding sitting, standing, and walking was based in part on

Plaintiff's headaches, the ALJ could reasonably discount the missed workdays limitation based on the same rationale he used in discounting exertional limitations. The Commissioner's argument is unpersuasive.

Although the ALJ provided germane reasons to discount Todd's opinion regarding Plaintiff's exertional, postural, and manipulative limitations, he failed to provide any reason for discounting the opinion as to the impact of Plaintiff's headaches on the number of workdays she could be expected to miss in a month. The ALJ failed to even mention Plaintiff's headaches in the two-paragraph rationale he provided for discounting Todd's opinion. Although the ALJ did not, as in *Dale,* divide the opinion into distinct parts, the single question regarding missed workdays is clearly separate from those that addressed exertional, postural and manipulative limitations. Contrary to the Commissioner's assertion, the rationale for discounting Todd's opinion as to these latter limitations cannot be reasonably or implicitly applied to support the obvious disregard for and rejection of the former.

Furthermore, while the Ninth Circuit in *Dale* did not specifically decide that it was error for an ALJ who had not divided the testimony of an "other source" into distinct parts to reject all of the testimony when only part of the testimony was inconsistent, it did note the possibility. *Dale*, 823 F.3d at 945 n.3(citing *McCann v. Colvin*, 111 F. Supp. 3d 1166, 1174 (W.D. Wash. 2015)). At least one other court in this District has found that it was error for an ALJ to reject the entirety of an "other source" opinion when only a portion of it was inconsistent with the record. *See Despinis v. Comm'r, Soc. Sec. Admin.*, No. 2:16-cv-01373-HZ, 2017 WL 1927926, at *9 (D. Or. May 10, 2017) (ALJ erred by not providing any reason to reject portion of opinion discussing headaches, where disabling headaches was the plaintiff's primary symptom allegation). Accordingly, because Todd's opinion regarding the number of workdays Plaintiff

could be expected to miss was rejected without comment, the ALJ erred. Given that crediting this evidence would impact the non-disability decision due to the VE's testimony that a person who missed more than one day of work per month would be precluded from gainful employment, (Tr. 54), the error was not harmless.

**II. Subjective Symptom Testimony Regarding Headaches**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)(quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citations omitted). If substantial evidence supports the ALJ's determination, it may be upheld even if some of the reasons cited by the ALJ are erroneous. *Carmickle v. Comm'r of Sec. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Plaintiff testified that while experiencing a headache, her activity level usually stops completely. Tr. 46. She reported that her vision and concentration are affected during a headache episode and she must lay down in a darkened, quiet room. Tr. 179, 183, 222. At the hearing Plaintiff testified that she experienced headaches two or three days every week and they lasted, on average, for two to three days. Tr. 46. In a Function Report dated January 4, 2014, Plaintiff reported that her headaches sometimes last a week and a half, starting out very severe for several days and then weakening for several more days until going away. Tr. 186. She reported that her missed days at work due to headaches had been increasing and had reached the point where her

employer terminated her employment due to excessive absenteeism. Id. Prior to stopping work, Plaintiff was regularly missing at least two days of work per month. Tr. 202-206. In a Headache Questionnaire completed in August 2014, Plaintiff wrote that she was getting headaches about every other week and they lasted one to two weeks at a time. Tr. 222.

Plaintiff argues that the ALJ failed to offer any reason, let alone a clear and convincing one, for rejecting her testimony regarding her headaches. Plaintiff asserts that although the ALJ found, in general, that the medical record did not support her allegations of disability, the ALJ did not discuss her headaches. The Commissioner argues that the ALJ reviewed Plaintiff's allegations regarding her headaches and noted that the evidence did not support her statements. She cites the ALJ's finding that "treatment notes do not include allegations of photophobia in connection with her headaches." Tr. 24. The Commissioner makes a broad citation to three consecutive pages of the ALJ's decision to support her argument that the ALJ "observed that Plaintiff's treatment history did not support Plaintiff's allegation of disabling symptoms, including from headaches, as the record shows limited treatment, including a three-year gap without specialized treatment for headaches." Def. Brief at 7 citing Tr. 24-26.

In his three-page discussion of the evidence upon which he relied to discount Plaintiff's subjective symptom testimony, the ALJ made only three brief references to Plaintiff's treatment for headaches. He observed that Plaintiff's treatment notes did not reflect allegations of photophobia in connection with her headaches. Tr. 24. He also noted Plaintiff's June 2013 visit to her neurosurgeon, Dr. Michael Sluss, for a one-year follow up on her complaints of headaches and for evaluation of increasing symptoms consistent with carpal tunnel syndrome. Tr. 24-25. The ALJ wrote that "[Plaintiff] stated her headaches currently occurred several times per month. She stated she initially received benefit upon beginning Verapamil, a year ago, but she currently

did not notice any obvious benefit." Tr. 25. The ALJ noted that Dr. Sluss reduced Plaintiff's Verapamil dose. Id. Lastly, the ALJ noted that Plaintiff followed up with Dr. Sluss in February 2016, "which is almost three years since their last encounter. Currently, she reported constant headaches. . .." Tr. 26. The ALJ remarked only that Dr. Sluss refilled Plaintiff's Verapamil prescription. The ALJ made no further references in his discussion of Plaintiff's symptom allegations to Plaintiff's headaches or their treatment. He concluded his discussion by finding that Plaintiff's "treatment and use of medication has been sporadic, routine and conservative. Similarly, the clinical observations of her treatment providers do not objectively describe symptoms or limitations so severe as to preclude her from all work activity." Tr. 26.

Although the ALJ did not neglect to address Plaintiff's headaches completely, this generalized finding fails to fulfill the requirement that he offer specific, clear, and convincing reasons for discounting her subjective symptom allegations. *See Garrison*, 759 F.3d at 1014-15; *see also Lester*, 81 F.3d at 834 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."); *Brown-Hunter v. Colvin*, 806 F.2d 487, 493 (9th Cir. 2015)(ALJ's reasoning "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds."). The ALJ thus erred in his rejection of Plaintiff's symptom testimony.

### III. RFC Determination

The RFC is the most a person can do, considering her physical or mental impairments. *See* 20 C.F.R. § 404.1545. The RFC must contemplate *all* medically determinable impairments, including those which the ALJ found non-severe, and evaluate all of the relevant testimony, including the opinions of medical providers and the subjective symptom testimony set forth by

the claimant. *Id.*; SSR 96–8p *available at* 1996 WL 374184. In formulating the RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only those limitations which are supported by substantial evidence must be incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001).

Plaintiff contends that the ALJ failed to include any limitations in the RFC that account for Plaintiff's headaches, which the ALJ determined were a severe impairment. Plaintiff points to her testimony regarding the impact of her headaches on her daily activities, record evidence that supports a finding that she would miss a significant number of days of work due to her headaches; and the opinion of a consultative medical examiner that Plaintiff "would have difficulty with persistence in her attention when she has a headache." Tr. 202-206, 311, 391, 398, 402, 405-406, 410. The Commissioner argues that the ALJ stated in his decision that the RFC accounted for Plaintiff's severe and non-severe limitations and the evidence supports his determination. However, the ALJ's mere statement that he accounted for Plaintiff's headaches is not sufficient.

Although the Commissioner provides a *post hoc* narrative discussion of certain evidence and how it supports the ALJ's conclusions, the ALJ himself failed to include any such analysis or explanation. SSR 96-8p. The ALJ also failed to resolve inconsistencies in the medical evidence. Despite asserting that the RFC was supported in part by the examination reports and medical source statements of Drs. Webster and Scharf, the ALJ failed to explain why Dr. Scharf's opinion that Plaintiff's headaches would cause difficulty with persistence in her attention was not addressed in the RFC. Id. (RFC must always consider and address medical source opinions and any conflict between those opinions and the RFC assessment). Furthermore,

FINDINGS AND RECOMMENDATION – 13

the ALJ improperly discredited Plaintiff's testimony and, as a result, it was not taken into account in assessing the RFC. Id.; *see also Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017) (claimant's symptom testimony must be taken into account when the ALJ assesses the claimant's RFC)(citing *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.6 (9th Cir. 2017) (as amended)).

      The ALJ erred in formulating Plaintiff's RFC and, as a result, it fails to factor in the full extent of Plaintiff's impairments. Since the analysis of the RFC was flawed and not based on the whole record, the VE's testimony had no evidentiary value, and the ALJ's finding that Plaintiff could perform other work was not based on substantial evidence. *Carmickle,* 533 F.3d at 1166; *see also Taylor v. Comm'r. of Social Security,* 659 F.3d 1228, 1235 ("Because neither the hypothetical nor the answer properly set forth all of [the claimant's] impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.")(citing *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir.1984)). Remand is therefore warranted.

## IV. Remand

      The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. 42 U.S.C. § 405(g); *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)).

      Under the "credit-as-true" doctrine, evidence should be credited and an immediate award

of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Garrison*, 759 F.3d at 1021 (citations omitted).

I cannot conclude on this record that "further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. "The touchstone for an award of benefits is the existence of a disability" rather than an ALJ's error. *Brown–Hunter*, 806 F.3d at 495 (citations omitted). Thus, the court must assess whether outstanding issues remain *before* considering whether to credit erroneously rejected evidence as a matter of law. *Id.*

In this case Nurse Practitioner Todd's opinion and Plaintiff's symptom testimony were not fully considered, resulting in the ALJ not addressing all of Plaintiff's limitations in his RFC assessment. However, because there are conflicts in the medical evidence and other unresolved issues, remand for further proceedings is appropriate. This will allow the ALJ to resolve those conflicts, credit the improperly discounted opinions and testimony as true or provide legally sufficient reasons for rejecting them, complete an RFC assessment based on the record as a whole, and make the proper determinations in the remaining steps of the disability analysis with the assistance of a vocational expert as necessary.

## Conclusion

For the reasons set forth above, the Commissioner's decision should be REVERSED, and this action should be REMANDED to the Agency for further proceedings consistent with this Findings and Recommendation.

**Scheduling Order**

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due September 9, 2019. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 26th day of August, 2019.

                                           /s/ John Jelderks
                                           John Jelderks
                                           U.S. Magistrate Judge